## DANIEL v. SENSEMAN et al.

No. 16385—Opinion Filed April 13, 1926.

Rehearing Denied June 22, 1926.

**1. Mechanics Liens—Contract With Owner Through His Agent—Proof of Agency.**

Where, in a suit to foreclose a lien for plumbing repairs made under contract with P., as agent of the owner, proof that the owner told plaintiff that he would give him some of his plumbing repair work, that P. was acting for him, and to take the matter up through P., and the further proof that, for the next two years, plaintiff did some repair jobs on the defendant's buildings, under instructions of P., and for which he received payment, was sufficient proof to establish agency.

**2. Same—Power of Attorney not Constructive Notice of Agent's Limited Authority.**

Where, in such case, the authority of the agent was in fact limited by a written power of attorney, which did not specifically describe any piece or parcel of land by lot, block, or otherwise, so as to enable the county clerk to properly index the same in the numerical index, required by law to be kept for that purpose, such power of attorney, though filed for record in the office of the county clerk of the proper county, was not constructive notice of the limitation of the power of the agent.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by W. O. Senseman, Jr., a sole trader doing business as Quick Plumbing & Sheet Metal Company, against R. T. Daniel and H. C. Kyle. Judgment for plaintiff, Senseman, and defendant R. T. Daniel appeals. Affirmed.

West & Petry, for plaintiff in error.

Kramer & Colley, for defendants in error.

Opinion by RAY, C. Defendant, plaintiff in error, appeals from a judgment of $907.25 and foreclosure of a lien for labor and materials furnished in repairing the plumbing in a hotel building owned by him in Tulsa.

The first proposition urged for reversal, that where one contracts with the tenant in possession to furnish labor or materials for improvements on real property he acquires a lien on the leasehold interest of the tenant for the amount of labor and materials furnished, but the lien does not attach to the interest of the owner, in the absence of an agreement of the owner to pay for the same, has no application. There was no evidence tending to prove a contract with the tenant in possession. As evidence tending to show that plaintiff looked to the tenant for payment, this question asked the plaintiff, and answer thereto, are quoted in the reply brief:

"Q. Did you ever charge Mr. Kyle (lessee in possession) for this work: Last part of 1920 or first part of 1921? A. Yes, sir."

An examination of the record discloses that the answer, "Yes, sir", was not in response to the question, "Did you ever charge Mr. Kyle for this work?" If counsel will re-examine the record, pages 66 and 68, they will discover their mistake, inadvertently made.

It is next contended that the agent was without authority to contract. The record discloses that the defendant R. T. Daniel, a nonresident, was an extensive owner of improved real property in Tulsa and Tulsa county, and that the collection of rentals and looking after repairs were entrusted to a local agent. As to the authority of the agent to make the contract, alleged to have been made by the agent with the plaintiff, plaintiff's evidence was that in 1920 or 1921, something like two years prior to the transaction in question, plaintiff, Senseman, being a tenant of the defendant Daniel, and engaged in the plumbing business, and knowing that Daniel required plumbing to be done in the different buildings owned by him, went to Daniel's office and asked for Mr. Young, who he at that time understood was acting for Mr. Daniel, and for the first time met Mr. Daniel. After introductions, plaintiff told Daniel that he was a tenant in one of his buildings and would like to do some of his plumbing; that he knew a lot was being done all the time, and Daniel replied:

"Yes, I have lots of work all the time. I have been giving Watt my work, but you boys are renting from us. I would just as soon give you some work as Mr. Watt. Mr. Young won't be with us any longer. I am letting him out. Mr. Provence is taking his place. He is looking after my interests in Tulsa and any business transaction you take up with him in regard to plumbing or repair work—take it up through Mr. Provence and not through Mr. Young."

Plaintiff further testified that during the two years intervening between this conversation with Mr. Daniel and the transaction in question, he did repair work under instructions of Mr. Provence on a number of buildings owned by the defendant Daniel, and he was always paid for the work by Mr. Provence.

We think that testimony was sufficient to justify the trial court in finding that Mr. Provence was the agent of the defendant Daniel, and authorized to contract for plumbing repairs. It was made to appear, however, by the defendant's evidence, that the power of the agent, Provence, was limited by a written power of attorney. He was authorized to contract and pay for repairs not to exceed $300, but any repair work in excess of that amount was to be submitted to Daniel for his approval before making the contract or having the repairs made. The power of attorney was acknowledged November 30, 1920, and filed for record with the county clerk of Tulsa county December 14, 1920, two years before the contract under consideration is alleged to have been made. This presents for consideration the question as to whether the power of attorney is such an instrument as authorized by statute to be recorded and to be constructive notice. The power of attorney provides:

"That I, the undersigned, R. T. Daniel, do hereby make, create, and constitute Charles N. Provence as my agent and attorney in fact, for me and in my name, place, and stead, to do and perform the following acts and duties and none other, towit: * * *

"To make all necessary and proper repairs on the said real estate of said R. T. Daniel, and to pay for same by writing a check on the checking account of R. T. Daniel set aside for such purposes, and said check to be approved of by the undersigned.

"That the said Charles N. Provence shall have no power to make payment in any other form; provided, further, that in no case shall the said Charles N. Provence have authority to make repairs in any instance costing more than $300 without first getting the written permission from the undersigned to do so. * * *"

This instrument was duly acknowledged and filed for record. The clerk's certificate is as follows:

"Filed for record in Tulsa county, Okla., on Dec. 14. 1920 at 9 o'clock a. m. Lewis Cline, County Clerk. By Brady Brown. Deputy.

"(Seal)"

Assuming, without deciding, that the au-

thority conferred upon Provence, the agent, to contract for repairs to the extent of $300, and thereby create a lien upon the real property affected to that extent, authorized the power of attorney to be filed and recorded in the office of the county clerk, the question then is, Did the instrument, as filed, constitute constructive notice of the limited authority of the agent?

Section 5260, C. S. 1921, provides that a power of attorney in fact for the conveyance of real estate or any interest therein shall be executed, acknowledged, and recorded in the manner required for the acknowledgment and recording of deeds and mortgages. Section 5252, C. S. 1921, provides that every conveyance of real property acknowledged, certified, and recorded, as provided by law is constructive notice of the contents thereof to subsequent purchasers, mortgagers, encumbrancers or creditors, from the time it was filed for record. Section 7637 provides that mortgages of real property may be acknowledged, certified, and recorded in like manner and in like effect as grants thereof. Section 5853, C. S. 1921, requires an index, direct and inverted, of deeds and mortgages to be kept, and provides the form for such index. That form includes a description of the property. Section 5857 requires that a numerical index be kept in which shall be noted all deeds relating to tracts of land within the limits of the county, and provides a form for such numerical index. That form also requires a. description of the property.

When an instrument is filed for record the county clerk is required to enter upon the alphabetical index, direct and inverted, the name of the grantor, the grantee, the date of filing, book and page where recorded, and a description of the property. He is also required to enter in the numerical index the names of grantor, grantee, kind of instrument, and description of the property. It is by these indexes that the recorded instruments may be found. Such an index can properly be made only where the instrument refers to specific property. Where the instrument tendered for record contains no reference, by description or otherwise, to specific real property, the instrument cannot be indexed as required by statute. We think the statute does not contemplate that the simple filing for record of an instrument, which does not describe or refer to any specific real property, should constitute constructive notice. Such an instrument could not be indexed as provided by the statute.

The evidence shows that Mr. Daniel was an extensive real estate owner in the city and county of Tulsa. By the power of attorney the agent was authorized to collect rents and look after all of his property in the city of Tulsa. No particular piece or parcel of land was described or referred t' When filed for record it did not contain the necessary information to enable the county clerk to index it as required by statute.

It is argued that by the terms of the unrecorded lease to Kyle, tenant in possession, it was the duty of Kyle to make any repairs, and, for that reason, the agent was not authorized to contract for such repairs, and that the plaintiff was put upon inquiry as to the terms of the lease by reason of Kyle's possession. We are unable to see any merit in this contention. The provision of the lease was that Kyle, lessee, was to keep and maintain, at his own expense, all of the premises in as good state of repair as when turned over to him, and at the end of the lease, to return the premises in as good condition as when he took possession, natural wear and tear and damage by the elements alone excepted. The building was a 70-room hotel, and the tenant had been in possession only six days when the first repairs were made by the plaintiff. We observe nothing in the language of the lease to justify the contention. That provision of the lease was to keep the building in as good state of repair as at the beginning of the lease, and not to put it in a good state of repair.

The final contention is that the judgment is against the clear weight of the evidence. Plaintiff's testimony was that the tenant told him there were certain repairs he wanted him to make, and he, plaintiff, replied, "all right, I better see Mr. Provence (agent of the defendant) about it first, hadn't I?" He said, "Yes, you better." He then testified that he started to Mr. Provence's office to see him and met him on the street, and said:

"'Mr. Province, I just started up to your office to see you. Mr. Kyle has some repair work he wants done', and I said, 'How about it'. He says, 'Fix him up, fix him up.'"

Afterwards the tenant wanted certain other repairs made.

"So I did not know just exactly how much there was, really, to be done there; started out, but we went ahead with it, and after that time I met Mr. Provence downstairs in front of the hotel, and told him Mr. Kyle wanted us to do this other work, and I said, 'I guess it is all right?' and he said 'Fix him up, fix him up, whatever is necessary,' and I says, 'You know I won't do anything that is unnecessary,' and he said 'Go ahead.'"

He further testified, in substance, that after the work was completed Mr. Provence objected to the amount of the bill, but agreed to pay it. Mr. Provence denied having any such conversation with the plaintiff, and denied that he authorized the work to be done or agreed to pay for it. On this conflicting evidence the general finding of the trial court was for the plaintiff. To make such general finding the trial court necessarily was required to accept the testimony of the plaintiff. No contention is made that the materials were not furnished and labor performed, or that the defendant did not receive the benefits. We are unable to say that the judgment is clearly against the weight of the evidence.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 954 § 727; 27 Cyc. pp. 64, 417; anno. L. R. A. 1918F, 96. (2) 34 Cyc. p. 615.